TEXTO COMPLETO DE LA SENTENCIA
El querellante-recurrente, Municipio de Corozal (el Municipio) solicita la revocación de la Resolución emitida por el Juez Administrativo de la Autoridad de Acueductos y Alcantarillados (Ledo. Juan A. Acarón
*693 Souffront) el 19 de abril de 2000. Mediante ésta se obligó al Municipio y al Macelo de Corozal (el Macelo) operado por Corozal Meat Processing, Inc. (Corozal Meat) a pagar a la Autoridad de Acueductos y Alcantarillados (la Autoridad) la cantidad de $181,828.56 por concepto de sobrecargos.
Por los fundamentos que exponemos a continuación, expedimos y revocamos la resolución recurrida.
I
El Municipio suscribió un contrato con el Sr. José L. Silva Marrero en el cual arrendó el Macelo para ser operado por el Sr. Silva haciendo negocios como Corozal Meat Processing, Inc. A éste le fue concedido un permiso de descarga de aguas residuales industriales a la Planta de Alcantarillado de la Autoridad de Corozal. El permiso establece que la Autoridad podrá cobrar sobrecargo. Por virtud del contrato con el Macelo el Municipio tiene el control sobre edificaciones y mejoras. El permiso conforme a sus propios términos, impone ciertos requisitos a la descarga de aguas residuales de Corozal Meat y requiere que se someta a la Autoridad informes de automuestreo y análisis de la descarga. Las violaciones a los límites del permiso están sujetas a la imposición de multas y la descarga está sujeta a sobrecargo por exceder los límites del Reglamento. La Autoridad facturaba por dichos servicios directamente a Corozal Meat y era ésta quien las pagaba.
A consecuencia del cobro por sobrecargos facturados a Corozal Meat, éste instó querella contra la Autoridad. Alegó que hubo un compromiso con la Autoridad de condonar la deuda a cambio de que el Municipio construyera una planta de pre-tratamiento y que su incumplimiento con los límites impuestos por la Autoridad a su descarga se debe al control del Municipio sobre las facilidades del Macelo.
A petición de Corozal Meat, se incluyó en la querella al Municipio por entender que es parte indispensable en el caso debido a que éste es el titular de la propiedad.
Luego de celebrada la vista, el Juez Administrador determinó mediante Resolución que el Municipio es deudor solidario de los sobrecargos que fueron facturados por su relación contractual con el Macelo y debido al control que ejerce sobre las facilidades del mismo.
El Municipio presentó moción de reconsideración, la cual fue declarada no ha lugar. Inconforme, radicó escrito de revisión, apunta que erró el Juez Administrativo al: 1) emitir una resolución transcurridos tres (3) años y seis (6) meses desde la celebración de la vista y no conforme con la Ley de Procedimiento Administrativo Uniforme; 2) concluir que el Municipio de Corozal y Corozal Meat Processing son deudores solidarios a la Autoridad de Acueductos y Alcantarillados por los sobrecargos facturados; 3) concluir que la relación comercial entre el Municipio de Corozal y el arrendador del Macelo los coloca en una relación comercial similar aquellas que el derecho ha establecido como sociedad; 4) no considerar las disposiciones de la Ley de Municipios Autónomos al incluir al municipio como parte en el proceso administrativo y al establecer responsabilidad al Municipio.
II
Alega el Municipio que la resolución recurrida fue emitida erróneamente toda vez que transcurrieron tres (3) años y seis (6) meses desde la celebración de la vista. Le asiste la razón. Veamos.
La Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 del 12 de agosto de 1988, 3 L.P.R.A. sees. 2163 y 2164, disponen lo siguiente:

“§ 2163. Vista - Procedimiento.

(g) Todo caso sometido a un procedimiento adjudicativo ante una agencia deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo en circunstancias excepcionales.

§ 2164. Ordenes o resoluciones finales.

*694
Texto de los Estatutos

Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.

El término para darle finalidad a los procedimientos administrativos establecido en las antes citadas secciones tienen como propósito impartirle celeridad y eficiencia al procedimiento adjudicativo.” D. Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, 1993, pág. 187.
A tenor con ellas, el término de seis (6) meses para resolver un caso no es jurisdiccional ya que puede ser extendido por consentimiento de las partes o por causa justificada. Como resolvió el Tribunal Supremo en el caso de Junta Examinadora de Tecnólogos Médicos v. Elias y otros, 144 D.P.R. _ (1997), 97 J.T.S. 141, pág. 322, los términos en que las agencias tienen que resolver según las disposiciones antes transcritas tienen que ser interpretados como directivos, mas su ampliación ocurre solamente en circunstancias excepcionales o por renuncia de las partes.
La obligación impuesta a las agencias de resolver los casos sometidos al procedimiento administrativo en el término de seis (6) meses, junto al interés que permea la ley en su totalidad de evitar los problemas de dilación excesiva en la adjudicación administrativa, demuestran que se trata de términos esencialmente de cumplimiento estricto. Junta Examinadora de Tecnólogos Médicos v. Elias y otros, supra, pág. 323. El alcance de los términos de cumplimiento estricto en los tribunales ha sido ampliamente discutido por la jurisprudencia. Bástenos señalar que ante éstos, el foro judicial no está atado al automatismo de los términos jurisdiccionales y puede proveer justicia según lo ameriten las circunstancias. Loperena Irizarry v. E.L.A., 106 D.P.R. 357, 360 (1977). En el ámbito administrativo, el concepto hay que considerarlo caso a caso, dependiendo de la experiencia judicial que ha definido lo que es demora y falta de diligencia en la solución de litigios judiciales. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, 1993, pág. 187.
En el ejercicio de nuestra discreción, los tribunales estamos obligados a evaluar la justa causa para las tardanzas conforme a que ésta debe estar basada en explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la demora ocurrió razonablemente, por circunstancias especiales. Arriaga v. F.S.E., 145 D.P.R. _ (1998), 98 J.T.S. 28, pág. 688.
Finalmente, se ha expresado que el remedio judicial que tiene una parte disponible cuando una agencia no resuelve un caso dentro del término establecido por L.P.A.U. es la presentación de un mandamus ante este Tribunal, para que la agencia cumpla con su deber ministerial. Ello sin menoscabo de que, al transcurrir los seis (6) meses para adjudicar, una parte solicite al foro administrativo que desestime el caso, por no existir el consentimiento, ni causa justificada para la demora. Junta Examinadora de Tecnólogos Médicos v. Elias y otros, supra, pág. 323. No obstante, las expresiones del Tribunal Supremo sobre los remedios disponibles no tienen carácter excluyente, es decir, si la parte no actúa presentando un mandamus o solicitando la desestimación ante la agencia, los tribunales no estamos impedidos de evaluar las circunstancias del caso.
En el caso de epígrafe la vista fue celebrada el 29 de octubre de 1996 y la resolución fue dictada el 19 de abril de 2000. La razón que dio la Autoridad para justificar la dilación no se incorporó en la resolución, sino que se presenta a este Tribunal al contestar el recurso. La razón en que se basa es que el Juez Administrativo tenía ante su consideración un caso de marcada dificultad por tratarse de un asunto de derecho ambiental. El mismo no es motivo aceptable como base de la dilación en este caso, que es uno sencillo, donde se facturan unos sobrecargos por alegada violación a unos permisos y reglamentación.
El admitir la resolución luego de haber transcurrido el término de tres (3) años y seis (6) meses, sería dejar sin efecto las disposiciones de L.P.A.U. que requieren de las agencias la disposición de los casos en los términos ya *695 mencionados, salvo por causas excepcionales o por anuencia de las partes. Ninguna de éstas está presente en este caso. Entendemos, que dicho término es excesivo y no presenta una justificación válida por lo que, va en contra del sistema justo en la adjudicación administrativa.
Alega también el Municipio que no se configuran entre el Municipio y Corozal Meat los conceptos de deudor solidario ni de sociedad.
Las obligaciones solidarias en Puerto Rico están reguladas por los Arts. 1090-1101 del Código Civil, 31 L.P. R.A. sees. 3101-3112. De estos artículos surge que en nuestra jurisdicción se presume la mancomunidad de las obligaciones, no su solidaridad, la cual debe surgir expresamente de la obligación, artículos 1090 y 1091 del Código Civil, 31 L.P.R.A. sees. 3101 y 3102.
En armonía con lo antes indicado, Campolieto Bielicki v. Anaya Portuondo, 142 D.P.R. _ (1997) 97 J.T.S. 26, pág. 679 expresó que por regla general la presunción de solidaridad no existe. En las obligaciones pluripersonales, se parte del principio de que el concurso de sujetos se lleva a cabo mancomunadamente y con carácter simple, por lo que la solidaridad constituye entonces la excepción.
De otra parte, el Art. 1556 del Código Civil, 31 L.P.R.A. see. 4311, define el contrato de sociedad civil como sigue:
“La sociedad es un contrato por el cual dos o más personas se obligan a poner en común dinero, bienes o industria con ánimo de partir entre sí las ganancias. ” (Enfasis suplido.)
En el caso de autos, la Autoridad sustenta su determinación argumentando que existe un interés apremiante del Municipio de defender los intereses económicos de Corozal Meat para que su participación en el ingreso o beneficios económicos de ésta última no se vean afectados. No obstante, surge del expediente que el permiso otorgado por la Autoridad para la descarga le fue expedido exclusivamente a nombre de Corozal Meat a quien se le facturaba por dichos servicios y era ésta quien las pagaba. Por lo que, la cantidad adeudada es responsabilidad absoluta de Corozal Meat y no del Municipio.
Por último señala que en la resolución no se consideraron las disposiciones de la Ley de Municipios Autónomos al incluir al Municipio como parte en el proceso administrativo. En vista de lo que resolvemos, no es procedente discutir este error señalado.
III
Por los fundamentos previamente expuestos, expedimos el recurso solicitado y revocamos la resolución recurrida en lo que respecta a la responsabilidad impuesta al Municipio.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General